THOMAS W. CALL AND BETTY L. CALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Call v. Commissioner
Docket No. 29006-82.
United States Tax Court
T.C. Memo 1985-318; 1985 Tax Ct. Memo LEXIS 312; 50 T.C.M. (CCH) 282; T.C.M. (RIA) 85318; July 1, 1985. Thomas W. Call, pro se. Richard W. Kennedy, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined the following deficiencies in, and additions to, petitioners' Federal income taxes: Year
Deficiency
Section 6653(a) [1]
1977
$13,971
$699
1978
5,977
299
1979
3,479
174
1980
8,544
427
*313 After concessions, the issues remaining for decision are: (1) whether petitioners are entitled to depreciation deductions and investment tax credits claimed in connection with a master recording; and (2) whether petitioners are liable for the addition to tax for negligence. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Boardman, Oregon, when they filed their petition in this case. [2]
In 1979, John Williams ("Williams") established and operated Diversified Financial Services ("DFS"), which was described as a "creative tax-planning service company." In the operation of DFS, Williams engaged in the preparation of tax returns and the sale of tax shelters in movies, master recordings, books and equipment. The tax sheltered investment *314 programs were offered through entities established and operated by Williams, including Genesis, Genesis Productions S.A., ("Genesis Productions"), Maranatha Recording and others. Williams asked potential clients to deliver to DFS copies of their Federal income tax returns for the prior three years. To determine the amount of each client's "investment", Williams totaled the amount of taxes paid by that client for the prior three years and multiplied this amount by ten. The fee Williams charged was based on the taxes "saved" the investor, who usually paid Williams by turning over to him tax refunds received from the filing of amended returns claiming carryback credits. In October of 1980, Williams made a presentation to a group of individuals in Oregon, including petitioner, regarding investments in tax shelters. Petitioner set up a personal meeting with Williams, at which petitioner "purchased" eighteen master recordings of gospel music from Genesis Productions. Petitioner had no previous experience with master recordings. The agreement petitioner signed stated that the purchase price of the recordings was $180,000. The purchase price consisted of: (1) a cash payment of $3,600; *315 (2) a second payment due upon receipt by petitioner of tax refunds from the years 1977, 1978, and 1979; (3) a third payment of ten percent of petitioners' 1980 state and Federal tax refund; and (4) a final payment in the amount set out in a document entitled "Full Recourse Promissory Note." The actual fair market value of the recordings in 1980 was nil. The purchase agreement provided that the master recordings were the only security for the promissory note. Petitioner actually had no personal liability for payment of the "full recourse" note. Petitioner never delivered the original of the note to Williams. No payments have ever been made on the note. At the time of his decision to invest, petitioner did not know what songs he was purchasing or who the performers were. Petitioner never saw or heard the masters and did not know where they were located. Petitioner did not know when or if the master recordings were ever made. When petitioner asked Williams for some proof that the masters existed, Williams sent him a pressing copyrighted 1979, by Maranatha Music. At the time petitioner signed the purchase agreement and the promissory note, petitioner also signed an "Agency Agreement" *316 with Continental Marketing. Continental Marketing was also operated by Williams. Petitioner had no further involvement with the distribution or marketing of the recordings. No sales or promotional activities ever took place, and petitioner received no income from the recordings. Petitioners' 1980 return claimed investment tax credits and depreciation deductions based on the master recording purchase. Petitioners then filed on March 17, 1981, Forms 1040X for the taxable years 1977, 1978, and 1979, claiming investment tax credit carrybacks and resulting refunds. On February 23, 1982, petitioners also filed, for the taxable years 1977 through 1980, documents entitled "Form 1040 - United States Income Tax Return," on which they wrote "Object self incrimination" rather than supplying information regarding income, deductions or tax liability. Williams was sued civilly for securities fraud and obtaining money by false pretenses by the State of Arizona on behalf of the investors, and a $5,800,000 judgment was entered against him in 1983. Williams was also indicted in 1983 by the State of Arizona on criminal securities fraud charges. Williams pled guilty and was in prison at the time *317 of this trial. OPINION At issue in this cjase are the depreciation deductions and investment tax credits claimed by petitioner as a result of his alleged master recordings purchase. Since respondent's determination carries a presumption of correctness, the burden of proof is upon petitioner to show his entitlement to the claimed deductions and credits. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Section 167(a) allows "as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear * * * of property used in the trade or business" or "property held for the production of income." However, an activity does not rise to the level of carrying on a trade or business nor are expenses incurred for the production of income unless the activity is engaged in with the objective of realizing a profit. Brannen v. Commissioner,78 T.C. 471, 499 (1982), affd. 722 F.2d 695 (11th Cir. 1984). Where not engaged in for profit, section 183 provides that deduction of expenses is essentially limited by the amount of income generated by the activity. A similar analysis is applicable with respect to the investment tax credit. *318 Flowers v. Commissioner,80 T.C. 914, 931 (1983). The credit is only available on property that is depreciable and has a useful life of at least three years. Section 48(a)(1). Thus, if property cannot be depreciated because it was not used in a trade or business, or was not held for the production of income, it cannot give rise to investment tax credit. Pike v. Commissioner,78 T.C. 822, 841-842 (1982), affd. 752 F.2d 164 (4th Cir. 1984). Whether an activity is engaged in for profit turns on whether the taxpayer has a bona fide objective of making a profit. Dreicer v. Commisioner,78 T.C. 642, 643-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), affd. without opinion 647 F.2d 170 (9th Cir. 1981). Profit objective is a question of fact to be determined from all the facts and circumstances. Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). The burden of proof is upon the taxpayer. *319 Surloff v. Commissioner,81 T.C. 210, 233 (1983); Rule 142(a).Greater weight is placed upon objective facts than upon mere statements of intent. Sec. 1.183-2(a), Income Tax Regs.; Churchman v. Commissioner.68 T.C. 696, 701 (1977). In carrying this burden the taxpayer need not demonstrate that his expectation of profits was reasonable, but only that he held an actual, and honest profit objective. Allen v. Commissioner,72 T.C. 28, 33 (1979). Some of the relevant factors to be considered in determining whether an activity is engaged in for profit are listed in section 1.183-2(b), Income Tax Regs.[3] In deciding whether the requisite profit motive exists in any case, the presence of one, or even a majority of these factors is not determinative. Benz v. Commissioner,63 T.C. 375 (1974); Golanty v. Commissioner,supra.
*320 Petitioner contends that when he purchased the master recordings there was every indication that his recordings would be a success and that he reasonably relied upon Williams' advice. Respondent argues that tax profit, rather than economic profit, motivated petitioner's acquisition and holding of the master recordings. We agree. Numerous examples of petitioner's "unbusinesslike manner" in this transaction illustrate petitioner's lack of concern with making a profit on the recordings. There is little evidence that petitioner's decision to acquire the master recordings was based upon the types of considerations that normally would be expected to influence a sincere investor. Petitioner did not know what songs or artists were included on his recordings. He did not listen to any of the recordings prior to his purchase. Further, petitioner had no previous experience in the recording industry. After signing the agreements prepared by Williams, petitioner expended little time or effort on his master recording activity. Petitioner's supervision of the master recordings was minimal. Neither Genesis Productions nor Continental Marketing ever conducted any sales or promotional activities *321 with respect to petitioner's recordings. The pressing petitioner received from Williams was copyrighted in a prior year by Maranatha Music and not by Genesis Productions. Petitioner never earned any profits on the master recordings. He presented only his self-serving testimony as evidence that the master recordings would appreciate in value. This testimony is not credible, particularly in light of the fact that petitioner can neither locate the recordings nor identify them. We found as a fact that the fair market value of the recordings was zero at the time they were acquired by petitioner.A purchase price that is inflated by nonrecourse indebtedness raises serious questions about the motives of the acquiring party, since the presence of nonrecourse indebtedness creates the potential for "shenanigans." See Flowers v. Commissioner,supra at 937; Ramsay v. Commissioner,83 T.C. 793 (1984). It is clear that petitioner's indebtedness was merely illusory. Petitioner has failed to show that he entered into the purchase of the master recordings with any genuine business purpose or concerns other than that of obtaining large deductions and credits *322 at a small out-of-pocket cost. Williams' prices and recommendations of the recordings was based upon tax considerations. The inflated indebtedness further illustrates that the purchase and holding of the recordings was actuated by a desire to gain the greatest deductions possible through a specious stratagem. It is clear that petitioner acquired the master recordings solely for the purpose of reducing his tax burdens, and we hold that the transaction was entered into and carried out with a complete indifference to profit. Thus, petitioner may not claim either depreciation deductions or investment tax credits and credit carrybacks for the taxable years 1977, 1978, 1979 and 1980. Accordingly, we need not address respondent's alternative arguments. We have considered petitioners' other arguments and find them unpersuasive. As to the section 6653(a) additions to tax, petitioners bear the burden of proof. Bixby v. Commissioner,58 T.C. 757, 791 (1972). Petitioner claimed deductions and credits that were clearly not allowable. Since petitioner failed to show that their underpyaments of tax were not due to negligence or intentional disregard of the revenue law, *323 we sustain respondent's determination. Based on the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner in the singular form hereinafter refers to petitioner Thomas Call.↩
3. Sec. 1.183-2. Activity not engaged in for profit defined. (b) Relevant factors. In determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account. No one factor is determinative in making this determination. In addition, it is not intended that only the factors described in this paragraph are to be taken into account in making the determination, or that a determination is to be made on the basis that the number of factors (whether or not listed in this paragraph) indicating a lack of profit objective exceeds the number of factors indicating a profit objective, or vice versa. Among the factors which should normally be taken into account are the following: (1) Manner in which the taxpayer carried on the activity. * * * (2) The expertise of the taxpayer or his advisors. * * * (3) The time and effort expended by the taxpayer in carrying on the activity. * * * (4) Expectation that assets used in activity may appreciate in value. * * * (5) The success of the taxpayer in carrying on other similar or dissimilar activities. * * * (6) The taxpayer's history of income or losses with respet to the activity. * * * (7) The amount of occasional profits, if any, which are earned. * * * (8) the financial status of the taxpayer. * * * (9) Elements of personal pleasure or recreation.↩